**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Daniel VanDaalen, | ) | No. CV 12-642-PHX-RCB (ECV) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| C.O. III c. Travis, et al., | ) | |
| Defendants. | ) | |

On March 26, 2012, Plaintiff Daniel VanDaalen, who is confined in the Arizona State Prison Complex-Tucson in Tucson, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.  On March 28, 2012, he filed a Motion for Appointment of Counsel.

In an April 26, 2012 Order, the Court noted that Plaintiff had not signed the Complaint and gave Plaintiff 30 days to submit a complete a signed Certificate, certifying that Plaintiff's signature on the Certificate would serve as an original signature, under penalty of perjury, on his Complaint.  On May 16, 2012, Plaintiff filed the signed Certificate.

In a May 30, 2012 Order, the Court granted the Application to Proceed, denied the Motion for Appointment of Counsel, and dismissed the Complaint because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On June 20, 2012, Plaintiff filed his First Amended Complaint (Doc. 10).  The Court

1   will dismiss the First Amended Complaint and this action.

2   **I.      Statutory Screening of Prisoner Complaints**

3          The Court is required to screen complaints brought by prisoners seeking relief against

4   a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

5   § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

6   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

7   be granted, or that seek monetary relief from a defendant who is immune from such relief.

8   28 U.S.C. § 1915A(b)(1), (2).

9          A pleading must contain a "short and plain statement of the claim *showing* that the

10  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

11  demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

12  unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

13  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

14  statements, do not suffice." Id.

15         "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

16  claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,

17  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

18  that allows the court to draw the reasonable inference that the defendant is liable for the

19  misconduct alleged." Id.  "Determining whether a complaint states a plausible claim for

20  relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

21  experience and common sense." Id. at 1950.  Thus, although a plaintiff's specific factual

22  allegations may be consistent with a constitutional claim, a court must assess whether there

23  are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

24         But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

25  must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th

26  Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards

27  than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,

28  94 (2007) (*per curiam*)).

1    **I.      First Amended Complaint**

2        In his two-count First Amended Complaint,[1] Plaintiff sues the following Defendants:

3    Arizona Department of Corrections (ADOC) Director Charles Ryan, former ADOC Director

4    Dora Schriro, Regional Health Administrator James Clenney, "F.H.C.M. II" Gene Greeley,

5    "FHA" Helena Valenzuela, Deputy Wardens Anna Jacobs and Keith Hartsock, Correction

6    Officer (CO) IVs Berrang and Swanton, CO IIIs C. Travis and Karoline Washman, John Doe

7    I, Supervising Nurses Christie Green and Brenda McMullin, and Larry Clausen.

8        Plaintiff asserts that he was involved in a car accident that led to his incarceration and

9    that, as a result of the accident, he has damage to his left leg, left arm, and brain.

10       In Count One, Plaintiff alleges violations of his Eighth Amendment rights, the

11   Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA).  Plaintiff first

12   contends that Defendant John Doe I was responsible for Plaintiff's initial placement in a third

13   floor unit at the Arizona State Prison Complex (ASPC)-Florence, which required Plaintiff

14   to climb two flights of metal stairs.  He also claims that Defendant Travis at ASPC-Florence

15   did not adequately respond to Plaintiff's July 2005 informal grievance regarding a "lack of

16   action to prepare for surgery on [Plaintiff's] left arm," Defendant Greeley did not respond

17   to Plaintiff's formal grievance regarding a doctor's decision to not perform surgery, and

18   Defendant Schriro responded to Plaintiff's grievance by informing Plaintiff than an

19   appointment for an evaluation would be scheduled in the near future, although that did not

20   occur.  Plaintiff states that Defendant Schriro "showed deliberate indifference in handling

21   [the] case."

22       Plaintiff asserts that in November 2005, Defendant Greeley "finally" responded to

23

24       [1]In the Court's May 30th Order, the Court noted that many of Plaintiff's claims
25   appeared to be barred by the two-year statute of limitations.  The Court noted that a § 1983
     claim accrues "when the plaintiff knows or has reason to know of the injury which is the
26   basis of the action," TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999), and directed
     Plaintiff to include in his amended complaint only those claims that accrued on or after
27   March 26, 2010, which was two years before he filed his Complaint.  Plaintiff did not do so.
28   He simply repeated, verbatim, every allegation he had made in his Complaint, without regard
     to the statute of limitations.  This in no way complies with the Court's Order.

1    Plaintiff's grievance and stated that nerve transplantation would not be effective on an "old"

2    injury and that the Botox injections, which Plaintiff had demanded and "earlier consulted

3    physicians" had recommended, were "not considered a medical option" at that point.

4    Plaintiff claims the injury was not "old" when surgery and Botox injections were initially

5    recommended and that "Defendant Greeley acted with deliberate indifference."

6            Plaintiff states that he was then transferred to the Rincon Unit at ASPC-Tucson, where

7    "[h]is mental condition was such that he did not file grievances."  He claims that an inmate

8    was assigned to act as Plaintiff's "ADA porter," that Defendant Martinez continued this

9    assignment when Plaintiff was transferred to the Santa Rita Unit at ASPC-Tucson, but

10   Defendant Jacobs discontinued the ADA porter when she replaced Defendant Martinez.

11   Plaintiff states that this "shows deliberate indifference for the needs of the Plaintiff."

12           Plaintiff asserts that he filed an informal grievance in July 2009, requesting to be

13   moved to an "ADA yard."  In August 2009, Defendant Swanton responded, stating that it

14   appeared Plaintiff had not properly attempted to resolve his grievance informally, although

15   Plaintiff contends that he had.  Plaintiff claims that Defendant Berrang forwarded Plaintiff's

16   complaint to "HH" and the Central Office forwarded the complaint to the Central Office-

17   Medical Appeals with a notation that the FHA in Tucson had not responded to the complaint.

18           Plaintiff contends that Defendant Clenney responded to Plaintiff's request to be

19   moved to an ADA yard, informing Plaintiff that ADOC does not maintain an ADA yard and

20   that "[a]ctivities such as therapy and surgery will be evaluated to determine their essential

21   necessity in allowing adequate functioning while you're in custody."  Plaintiff asserts that

22   disabled inmates are supposed to be provided with facilities that fully accommodate their

23   needs, that a lack of funding for such facilities is not a defense to a constitutional violation,

24   and that ignoring this "shows deliberate indifference on the part of [Defendant] Clenney."

25           Plaintiff claims that he appealed to Defendant Ryan who, in May 2010, informed

26   Plaintiff that his condition had been properly evaluated by his health care provider and that

27   his current housing unit adequately met his medical needs.  Plaintiff contends that Defendant

28   Ryan sent this response to Plaintiff at the Rincon Unit, which was a level four medical yard,

but Plaintiff had been moved from that yard more than a year before Defendant Ryan sent his response.

Plaintiff contends that he is now housed at the Manzanita Unit at ASPC-Tucson. He claims that he has submitted health needs request forms almost weekly since August 2010, complaining about pain in his left leg, left arm, and right shoulder. Plaintiff asserts that the responses to those requests vary, but typically are: "IM has been seen. IM will be seen. Inmate is scheduled for surgery consults have been scheduled, dates not given to inmates."

Plaintiff also claims Defendant Valenzuela denied Plaintiff's May 2011 request for physical therapy and responded to Plaintiff's urinary incontinence concerns by noting that security had seen Plaintiff running on the recreation yard, so there was no medical need for Plaintiff to be moved closer to a bathroom. Plaintiff claims this shows "deliberate indifference to the special needs of the Plaintiff."

Plaintiff contends that Defendant Hartsuck denied Plaintiff's request for a word processor that had been issued to Plaintiff when he was in another unit, but had been taken when Plaintiff was transferred to the Manzanita Unit. Plaintiff states that Defendant Hartsuck stated that the medical department had informed him that Plaintiff should not be given a word processor based on medical need. Plaintiff contends that Defendants Green and McMullin "have evaluated [Plaintiff] as not being in medical need of these accommodations."

Plaintiff also states that Defendant Washman "has passed complaints regarding medical issues along to the medical staff but has gotten only negative responses." Plaintiff "feels [Defendant] Washman is discriminating against him and this is the real reason she does not 'have time' to meet with him on grievances."

In Count Two, Plaintiff alleges that Defendants have violated the ADA and RA "by failing to provide appropriate auxiliary aids and services to prisoners where necessary for effective communication, including communication with the courts." Plaintiff claims that he was approved to use a word processor to facilitate communication with the courts, but the word processor was taken away when he was transferred to the Manzanita Unit. He claims

that he cannot write and that a prison paralegal "has done all the writing [Plaintiff] has needed," but "cannot devote more time to [Plaintiff's] needs" because the paralegal is responsible for nine prisons.

In his Request for Relief, Plaintiff seeks monetary damages, his court costs and fees, access to and inclusion in various therapies, "all activities and services offered, surgery and rehabilitation."

**IV.    Failure to State a Claim**

Although *pro se* pleadings are liberally construed, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  <u>Ivey v. Board of Regents of the University of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.  <u>Id</u>.

**A.    Eighth Amendment Claims**

Although Count One of the First Amended Complaint is virtually identical to the Count One of the original Complaint, the Court notes that Plaintiff did make some modifications, presumably to address the fact that the Court had dismissed Plaintiff's Eighth Amendment claims because Plaintiff failed to allege that any Defendant had acted with deliberate indifference.  In his First Amended Complaint, Plaintiff added statements alleging that Defendants Schriro, Greeley, Jacobs, Clenney, and Valenzuela acted with "deliberate indifference."

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. <u>Jett</u>, 439 F.3d at 1096 (quotations omitted).

1    "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,

2    1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know

3    of and disregard an excessive risk to inmate health; "the official must both be aware of facts

4    from which the inference could be drawn that a substantial risk of serious harm exists, and

5    he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate

6    indifference in the medical context may be shown by a purposeful act or failure to respond

7    to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439

8    F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally

9    denies, delays, or interferes with medical treatment or by the way prison doctors respond to

10   the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

11       Deliberate indifference is a higher standard than negligence or lack of ordinary due

12   care for the prisoner's safety.  Farmer, 511 U.S. at 835.  "Neither negligence nor gross

13   negligence will constitute deliberate indifference." Clement v. California Dep't of

14   Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter

15   Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or

16   "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does

17   not amount to deliberate indifference to [a plaintiff's] serious medical needs." Sanchez v.

18   Vild, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is

19   insufficient to state a claim against prison officials for deliberate indifference. See Shapley

20   v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). The indifference

21   must be substantial.  The action must rise to a level of "unnecessary and wanton infliction

22   of pain." Estelle, 429 U.S. at 105.

23       As was the case with his original Complaint, Plaintiff does not allege that Defendants

24   Ryan, Hartsock, Berrang, Swanton, Travis, Washman, John Doe I, Green, McMullin, or

25   Clausen acted with deliberate indifference.  Nor do his allegations support such a claim.

26   Although Plaintiff does allege that Defendants Schriro, Greeley, Jacobs, Clenney, and

27   Valenzuela acted with "deliberate indifference," "[t]hreadbare recitals of the elements of a

28   cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct.

1    at 1949.  Plaintiff's vague and conclusory allegations against these Defendants do not rise

2    to the level of deliberate indifference to Plaintiff's serious medical needs.

3              Thus, the Court will dismiss without prejudice Plaintiff's Eighth Amendment claims

4    in Count One.

5              **B.    ADA and RA**

6              As was the case with his original Complaint, Plaintiff appears to be raising claims

7    under the ADA and RA regarding his medical care in Count One of the First Amended

8    Complaint.  He cannot do so.  See Carrion v. Wilkinson, 309 F. Supp. 2d 1007, 1016 (N.D.

9    Ohio 2004) ("The ADA and Rehabilitation Act afford disabled persons legal rights regarding

10   access to programs and activities enjoyed by all, but do not provide them with a general

11   federal cause of action for challenging the medical treatment of their underlying disabilities."

12   (quoting Galvin v. Cook, 2000 WL 1520231, at *6 (D. Or. 2000))).  Thus, the Court will

13   dismiss without prejudice Plaintiff's ADA and RA claims in Count One.

14             In Count Two, Plaintiff appears to assert violations of the ADA and RA occurred

15   when his word processor was taken away when he was transferred to the Manzanita Unit.

16   Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such

17   disability, be excluded in participation in or be denied the benefits of the services, programs,

18   or activities of a public entity, or be subjected to discrimination by any such entity."  42

19   U.S.C. § 12132.  As used in this provision, a "public entity" is defined, in part, as "(A) any

20   State or local government; [or] (B) any department, agency, special purpose district, or other

21   instrumentality of a State or States or local government."  42 U.S.C. § 12131.

22             The RA "is materially identical to and the model for the ADA, except that it is limited

23   to programs that receive federal financial assistance."  Armstrong v. Davis, 275 F.3d 849,

24   862 n.17 (9th Cir. 2001) (internal quotation omitted).   Title II of the ADA was expressly

25   modeled after § 504 of the RA. Zuckle v. Regents of the University of California, 166 F.3d

26   1041, 1045 (9th Cir. 1999).   Because the ADA has a broader scope, the Ninth Circuit

27   analyzes both Acts under an ADA standard.  See Armstrong, 275 F.3d at 862; Zuckle, 166

28   F.3d at 1045 n.11 ("There is no significant difference in analysis of the rights and obligations

1  created by the ADA and the Rehabilitation Act.").

2        To state an ADA or RA claim, a plaintiff must demonstrate that he:

3             (1) is a handicapped person; (2) that he is otherwise qualified;
           and that [prison officials'] actions either (3) excluded his
4             participation in or denied him the benefits of a service, program,
           or activity; or (4) otherwise subjected him to discrimination on
5             the basis of his physical handicap.

6  Duffy v. Riveland, 98 F.3d 447, 455 (9th Cir. 1996).

7        Plaintiff's allegations in Count Two of his First Amended Complaint are identical to

8  his allegations in Count Two of his original Complaint, except that he now alleges that a

9  prison paralegal has been writing documents for Plaintiff.  This allegation does not alter the

10  Court's conclusion, stated in the May 30th Order, that Plaintiff's vague and conclusory

11  allegations do not support a claim under the ADA or RA.   Thus, the Court will dismiss

12  Count Two.

13  **IV.  Dismissal without Leave to Amend**

14        Because Plaintiff has failed to state a claim in his First Amended Complaint, the Court

15  will dismiss his First Amended Complaint.  "Leave to amend need not be given if a

16  complaint, as amended, is subject to dismissal."  Moore v. Kayport Package Express, Inc.,

17  885 F.2d 531, 538 (9th Cir. 1989).  The Court's discretion to deny leave to amend is

18  particularly broad where Plaintiff has previously been permitted to amend his complaint.

19  Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Repeated

20  failure to cure deficiencies is one of the factors to be considered in deciding whether justice

21  requires granting leave to amend.  Moore, 885 F.2d at 538.

22        Plaintiff has made two efforts at crafting a viable complaint and appears unable to do

23  so despite specific instructions from the Court.  The Court finds that further opportunities to

24  amend would be futile.  Therefore, the Court, in its discretion, will dismiss Plaintiff's First

25  Amended Complaint without leave to amend.

26  **IT IS ORDERED:**

27        (1)   Plaintiff's First Amended Complaint (Doc. 10) and this action are **dismissed**

28  for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

        (2)     The Clerk of Court must make an entry on the docket stating that the dismissal

for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

        (3)     The docket shall reflect that the Court certifies, pursuant to 28 U.S.C.

§ 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this

decision would not be taken in good faith.

        DATED this 8th day of August, 2012.


_____
Robert C. Broomfield
Senior United States District Judge